558 A.2d 733

Al Wayne DOERING

v.

John F. FADER II, Associate Judge, Circuit Court for Baltimore County.

Misc. No. 10, Sept. Term, 1989.

Court of Appeals of Maryland.

June 8, 1989.

Nancy M. Cohen, Asst. Public Defender and David L. Addison, Asst. Public Defender, for petitioner.

J. Joseph Curran, Jr., Atty. Gen. and Cathleen C. Brockmeyer, Asst. Atty. Gen., for respondent.

Submitted to MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

Al Wayne Doering was convicted of first degree murder and sentenced to death at a trial in the Circuit Court for Baltimore County. Judge John F. Fader, II, presided, and a jury decided the issues of guilt and sentencing. This Court affirmed the conviction, but vacated the sentence and remanded the case for a new sentencing proceeding, finding that evidence relating to parole had been improperly excluded. *Doering v. State,* 313 Md. 384, 545 A.2d 1281 (1988).

Upon remand, Judge Fader advised both parties that he intended to recuse himself. On motion of the defendant, Judge Fader held a hearing on the question of his disqualification, and ruled that he would recuse himself because he had previously formed and expressed an opinion that death was not the appropriate sentence for Doering. Within thirty days of that action, the defendant filed in this Court a "Petition for Writ of Prohibition, Mandamus or Other Appropriate Relief," asking that we direct Judge Fader to preside at the new sentencing proceeding. We will not grant the requested relief, but we will direct that Judge Fader reconsider recusal in light of the following discussion of the requirements of Canon 3C of the Maryland Code of Judicial Conduct, Maryland Rule 1231.

Canon 3 C provides in pertinent part that:

(1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....

Judge Fader apparently felt that he was biased or prejudiced within the meaning of Canon 3 C because he had previously heard evidence and arguments in the case, and had expressed an opinion based upon that knowledge. At the recusal hearing, he recounted the facts as follows:

Mr. Doering, after the trial of the case and the guilty findings, elected to be tried before the Court before a jury on sentencing. The jury indicated that a sentence of death should occur. The Court of Appeals requires certain forms to be filled out in a report of a trial judge and one of the questions that they ask is whether the trial judge feels that the sentence of death was appropriate. I said, in answer to that question, that it is doubtful. Make no mistake about it, I would not have imposed the death sentence on Al Wayne Doering. I felt that it was a case for life imprisonment. But he wanted a jury.

\* \* \* \* \* \*

The fact of the matter is that now the defendant, Al Wayne Doering, has filed a motion that I be the trial judge in the case and understandably why. I do not feel and did not feel that it was fair to the State that I should sit in judgment of this particular case.

The report of the trial judge to which Judge Fader referred is required by Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 414(b), and by Maryland Rule 4–343.[1] In addition to

---

1. A report of the trial judge is required following every sentencing proceeding in a capital case, irrespective of the sentence imposed. The principal purpose of the report is to provide a data bank to which this Court may refer in following the legislative mandate to review every death sentence to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor," and "[w]hether the sentence of death is excessive or

providing other information, the trial judge is required to state the "Recommendation of Trial Court As To Whether Imposition of Sentence of Death is Justified." Judge Fader's statement on the trial judge's report in this case was, "It is doubtful."

■ Interpreting a federal statute [2] which also requires recusal when the assigned judge "has a personal bias or prejudice," the United States Supreme Court said:

The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481. Any adverse attitudes that [the trial judge] evinced toward the defendants were based on his study of the depositions and briefs which the parties had requested him to make. What he said reflected no more than his view that, if the facts were as the Government alleged, stringent relief was called for.

*United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). The District of Columbia Court of Appeals, in *Matter of Evans,* 411 A.2d 984, 995 (D.C.App.1980), summarized a number of holdings that are relevant here:

Ordinarily, a trial judge is not required to recuse when an affiant alleges bias arising from a source within the "four corners of the courtroom." *Tynan v. United States,* 126 U.S.App.D.C. 206, 210, 376 F.2d 761, 765, *cert. denied,* 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967). The "four corners of the courtroom" test is really an alternative formulation of the rule that bias must be personal rather than judicial before recusal will be required. The proper distinction is "between a judicial determination

---

disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Article 27, § 414(e). *See White v. State,* 300 Md. 719, 742, 481 A.2d 201 (1984).

**2.** 28 U.S.C. § 144.

derived from evidence and lengthy proceedings before the court, and a determination not so founded upon facts brought forth in court, but based on attitudes and conceptions that have their origins in sources beyond the four corners of the courtroom." *In re Federal Facilities Realty Trust Co.*, 140 F.Supp. 522, 526 (N.D.Ill.1956). Essentially, the importance of the distinction lies not in the physical location of the incidents from which bias is alleged to arise, but in the nature of the incidents as inside or outside the scope of official judicial conduct in regard to the instant or a prior case. *See United States v. Haldeman*, 181 U.S.App.D.C. 254, 356 n. 301, 559 F.2d 31, 133 n. 301 (1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Gilboy*, 162 F.Supp. 384, 394 (M.D.Pa.1958). "The alleged bias and prejudice to be disqualifying must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

To the same effect, *see Fitzgerald v. Penthouse Intern., Ltd.*, 691 F.2d 666, 672 (4th Cir.1982); *United States v. Partin*, 552 F.2d 621, 636–39 (5th Cir.1977); *United States v. Falcone*, 505 F.2d 478, 485 (3d Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975); *United States v. English*, 501 F.2d 1254, 1263 (7th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *Barry v. Sigler*, 373 F.2d 835, 836 (8th Cir.1967); *Barkan v. United States*, 362 F.2d 158, 160 (7th Cir.1966), *cert. denied*, 385 U.S. 882, 87 S.Ct. 170, 17 L.Ed.2d 109; *Gregory v. United States*, 393 A.2d 132, 143 (D.C.App.1978).

State courts considering similar statutes or rules have reached similar results. *See Medical Arts Clinic, P.C. v. Henry*, 484 So.2d 385, 387–88 (Ala.1986); *People v. Moreno*, 70 N.Y.2d 403, 521 N.Y.S.2d 663, 516 N.E.2d 200, 203 (1987); *In re T.L.S.*, 144 Vt. 536, 481 A.2d 1037, 1041 (1984); *Moreland v. State*, 469 So.2d 1305, 1307 (Ala.Cr.App.1985);

*Jones v. State,* 416 N.E.2d 880, 881 (Ind.App.1981); *Taxation and Revenue Dept. v. Van Ruiten,* 107 N.M. 536, 760 P.2d 1302, 1305 (App.1988); *State ex rel. Bardacke v. Welsh,* 102 N.M. 592, 698 P.2d 462, 473 (App.1985); *Reading v. Ball,* 291 S.C. 492, 354 S.E.2d 397, 398 (App.1987); *Payne v. Holiday Towers, Inc.,* 283 S.C. 210, 321 S.E.2d 179, 183 (App.1984); *People v. Diaz,* 130 Misc.2d 1024, 498 N.Y.S.2d 698, 701 (Co.Ct.1986).

This Court recently discussed Canon 3C in *State v. Calhoun,* 306 Md. 692, 749, 511 A.2d 461 (1986), and noted that a judge is not disqualified because he has expressed his opinion as to the case. More recently, the Court of Special Appeals stated in *Boyd v. State,* 79 Md.App. 53, 555 A.2d 535 (1989), that:

"Personal knowledge of disputed evidentiary facts" concerning the proceedings, has been defined as "knowledge acquired from extra-judicial sources, not what the judge learned from his participation in the case." *Jones v. State,* [416 N.E.2d 880 (Ind.App.1981)]; *United States v. Mitchell,* 377 F.Supp. 1312 (D.C.D.C.1974); *United States v. English,* [501 F.2d 1254 (7th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975)].

We find nothing in this record to suggest that Judge Fader has received any information other than that which was properly produced [3] during previous court proceedings in this case. Moreover, this is not a case in which reversal occurred because evidence was improperly received and those who heard the prior evidence could thereby be biased.

---

3.  There are, of course, occasions when information received by the trial judge will result in disqualification. *See, e.g., Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (resentencing should be accomplished by a different judge when plea agreement has been violated and appropriate relief is specific performance of the agreement); *Miller v. State,* 272 Md. 249, 255, 322 A.2d 527 (1974) (same); *Cornish v. State,* 272 Md. 312, 321–22, 322 A.2d 880 (1974) (information that should not have been presented to the trial judge may sufficiently impair the judge's ability to be impartial so as to justify a mistrial in a non-jury proceeding). This is not one of those situations.

Nor do we have the situation of a defendant seeking recusal because he fears retribution from a judge whose ruling was reversed on appeal.

The record indicates the trial judge misperceived the nature of the extrajudicial facts he was precluded from considering.

. THE COURT: In other words, I would be sitting in one proceeding and be aware of facts that had been received in another judicial proceeding. They would have been extrajudicial to the proceeding before me.

[DEFENSE COUNSEL]: No, respectfully, Your Honor, I disagree with that. This is all arising out of the case 86–CR–6128.

THE COURT: I understand you disagree with it, sir.

It seems clear that the decision to recuse was based upon Judge Fader's belief that he would have to be able to completely put out of his mind all that he had heard before in this case in order to be competent to sit. In this belief he was wrong. We conclude he must be given an opportunity to consider the question of recusal without the pervasive influence of this misperception of the law.

The appropriate question is whether the trial judge is confident that he could, if persuaded by additional evidence or argument, come to a conclusion different from that which he has reached upon consideration of the proceedings to date. If he can, and if there are not other disqualifying factors which do not appear in this record, he is competent to sit and should not recuse himself. This trial judge has the benefit of having heard the entire trial and the previous sentencing proceeding. That places him in an excellent position either to preside over a second jury sentencing proceeding or, if the defendant waives his right to a jury,[4] to hear the evidence and arguments and pass judgment.

---

4. In Maryland, the defendant may waive the right to have a jury decide the question of sentencing in a capital case. Article 27, § 413(b)(3).

Maryland Rule 4–343(c) provides that in capital sentencing cases and in the absence of disqualification or disability, "the judge who presides at trial shall preside at the sentencing proceeding." Without deciding the questions of whether that rule has direct application to a second sentencing hearing after remand, or is subject to the same interpretation this Court recently afforded Rule 4–346(c) in *State v. Peterson*, 315 Md. 73, 553 A.2d 672 (1989), it is at least clear that there is a stated preference that the judge who presided at the trial also preside at sentencing. *See also* Maryland Rule 4–342(c), dealing with sentencing in non-capital cases. In the instant case, the County Administrative Judge assigned the sentencing proceeding to Judge Fader following receipt of our mandate and, unless there is reason for disqualification, Judge Fader should proceed with the sentencing portion of the trial.

Although we strongly suspect from a reading of the record of the recusal hearing that Judge Fader is confident of his ability to hear the evidence and argument and to reach a fair and impartial decision based upon all the evidence, notwithstanding the preliminary decision he had reached, we note that there are statements in the record which might support a different conclusion. The judge said, among other things:

> I state today, as I have previously to you, I would not have imposed the death sentence and doubt that there is any circumstance that would cause me to impose the death sentence on Al Wayne Doering.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> I say this, that should the Court of Appeals tell me that I am to sit in judgment of this case, I unhesitatingly will obey them and do what they tell me to do. In that situation the very, very, very great probability would be that I would impose a sentence of life upon Al Wayne Doering because I can't imagine, with the excellent job that was done by both sides in this case at trial, that there is going to be any other evidence that would come about that would convince me to do anything other than

what I had indicated in the report of the trial judge and also would change my mind with regard to the sentence that would be imposed.

These statements may suggest that the judge's view of the proper sentence to be imposed is so strongly held that he can conceive of no fact that would change it. On the other hand, the statements may suggest that the judge could be persuaded that the appropriate sentence was death, but because of the exhaustive evidence presented to date and the high quality of arguments previously made by each side, the judge is doubtful that more information which would be helpful exists.

Judge Fader is, of course, able to promptly resolve the question. If, upon reconsideration, he determines that he would be able to render a fair and impartial decision he may determine that he will sit. In that event, the defendant will understand that the trial judge sits with an open mind, and may decide to impose the sentence of death if the responsibility for that decision is given to him. If, on the other hand, Judge Fader believes for any reason that he could not be fair and impartial, he will decline to sit, and the matter will be finally resolved.

The decision to recuse is interlocutory, and is therefore not subject to immediate appeal. Under ordinary circumstances, we would decline to grant immediate appellate attention to a decision relating to recusal through the use of a writ of mandamus or prohibition. This, however, is not an ordinary case. Before us is a unique set of facts, involving a decision that directly affects the proper conduct of a sentencing proceeding in a capital case. The penalty of death "is qualitatively different from a sentence of imprisonment, however long," *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), and a capital sentencing proceeding is qualitatively different from an ordinary sentencing proceeding. *See also Harris v. State*, 299 Md. 511, 517–18, 474 A.2d 890 (1984). At issue is a critical matter of whether the assigned judge, who is in a superior and legally preferred position to preside at the

capital sentencing proceeding, may be withdrawing because of a misunderstanding of the applicable law. This defendant has already undergone one capital sentencing proceeding.

We are here afforded the opportunity to promptly and simply return the second such proceeding to a proper track, and that, in our judgment, warrants the grant of an extraordinary writ.

■ We recently discussed the authority of this Court to issue the writs of mandamus and prohibition in aid of our appellate jurisdiction. *In Re Petition for Writ of Prohibition,* 312 Md. 280, 539 A.2d 664 (1988). As Judge Adkins summarized for the Court:

> Thus it appears that mandamus or prohibition may issue in aid of appellate jurisdiction even though no appellate proceeding is pending in the appellate court, at least where there is some potentiality of eventual appellate review by appeal or by certiorari.

*Id.* at 302–303, 539 A.2d 664. We distinguished this power from original authority to issue the writ of mandamus, quoting from *Ex parte Crane,* 30 U.S. (5 Pet.) 190, 193, 8 L.Ed. 92 (1831) as follows:

> A mandamus to an officer is held to be the exercise of original jurisdiction; but a mandamus to an inferior court of the United States, is in the nature of appellate jurisdiction.

We have acknowledged that the power to issue an extraordinary writ of mandamus is one which ought to be exercised with great caution. *In Re Petition for Writ of Prohibition, supra,* 312 Md. 305, 539 A.2d 664. It has also been said that mandamus is a writ "to prevent disorder, from a failure of justice, where the law has established no specific remedy, and wherein justice and good government there ought to be one...." *Runkel v. Winemiller,* 4 H. & McH. 429, 449 (Gen.Ct.Oct.Term 1799).

Although we conclude that the issuance of the writ of mandamus would be appropriate in this case, we anticipate

that the trial judge will voluntarily vacate the present order of recusal and promptly schedule a new hearing on the request for recusal, so that the writ need not in fact issue with the mandate.

IT IS SO ORDERED; COSTS TO BE PAID BY BALTIMORE COUNTY, MARYLAND.

RODOWSKY, Judge, dissenting.

I respectfully dissent. The majority concludes that Judge Fader's denial of Doering's motion that Judge Fader be the trial judge presents "a unique set of facts, involving a decision that directly affects the proper conduct of a sentencing proceeding in a capital case." Conduct of the new sentencing proceeding before some judge other than Judge Fader cannot justify mandamus, because no litigant has the right to select the presiding judge for a newly assigned matter. If Judge Fader has given an invalid excuse for non-compliance with the administrative judge's case assignment, it is an administrative matter that creates no right in Doering to appellate intervention at this stage.